# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRAVIS SHAMIER WILSON, | ) |
| Petitioner, | ) |
| v. | ) Case No. 14-CV-422-JED-tlw |
| JANET DOWLING, Warden,[1] | ) |
| Respondent. | ) |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. In a prior Opinion and Order (Doc. 20), the Court denied Respondent's motion to dismiss for failure to exhaust state remedies, finding that although Petitioner's claims raised in Ground 3 of the petition have not been presented to the state courts, it would be futile to require Petitioner to return to state court because the claims would be denied as procedurally barred. Thereafter, the parties filed response briefs in compliance with the Court's directives. *See* Docs. 21, 26, 29. Respondent also provided the state court record (Docs. 26, 27, 28). For the reasons discussed below, the petition shall be denied.

## *BACKGROUND*

Between 7:30 and 8:00 a.m., on January 31, 2008, Antonio Nears was shot and killed while sleeping in the same bed with his girlfriend, Kiona Woodson (Kiona), and one of the couple's three-week-old twins. Nears was shot at least twelve times at very close range. The shooting occurred at the home of Kiona's grandmother, Ruthie Jones, located at 4063 East 22nd Place, Tulsa, Oklahoma, a few blocks south of the Tulsa Fairgrounds. During a 911 call placed moments after

---

[1] Petitioner is in custody at Dick Conner Correctional Center in Hominy, Oklahoma. Pursuant to Rule 2(a), *Rules Governing Habeas Corpus Cases*, the proper party respondent in this matter is Janet Dowling, Warden. Therefore, Janet Dowling, Warden, is substituted in place of Robert Patton, Director, as party respondent. The Clerk of Court shall note the substitution on the record.

the shooting, Kiona identified the shooter as her uncle, Travis Wilson. The shooter fled the scene on foot. A police canine unit followed a track leading to the Pavilion, a building located on the north side of the fairgrounds. Within days of the shooting, Petitioner Travis Wilson was taken into custody in Hutchinson, Kansas, where he had gone to visit a relative. On March 2, 2008, more than a month after the shooting, Tulsa Police recovered a handgun found in the bushes outside the Pavilion. The recovered handgun was used in the shooting of Antonio Nears.

On October 16, 2009, a jury convicted Petitioner of First Degree Murder in Tulsa County District Court, Case No. CF-2008-518. On November 2, 2009, the trial judge sentenced Petitioner, in accordance with the jury's recommendation, to life imprisonment. Attorney Kevin D. Adams represented Petitioner at trial.

Petitioner perfected a direct appeal at the Oklahoma Court of Criminal Appeals ("OCCA"). Represented by attorney Laura M. Arledge, Petitioner raised eight (8) propositions of error as follows:

> Proposition 1: There was insufficient evidence to convict Mr. Wilson of First Degree Murder.
>
> Proposition 2: The discriminatory use of peremptory challenges against minority jurors violated Mr. Wilson's Sixth and Fourteenth Amendment constitutional rights to equal protection and to an impartial jury drawn from a cross-section of the community.
>
> Proposition 3: The trial court abused its discretion in admitting hearsay evidence which irreparably prejudiced Mr. Wilson.
>
> Proposition 4: Even if the court finds that admission of the 911 call was admissible, that the State played it three times during trial constituted needless presentation of cumulative evidence, which prejudiced Mr. Wilson.
>
> Proposition 5: Mr. Wilson was prejudiced due to prosecutorial misconduct in violation of his right to a fair trial.

> Proposition 6: Trial court committed error by allowing evidence to be admitted with insufficient chain of custody in violation of Mr. Wilson's right to due process and fundamentally fair trial.
>
> Proposition 7: Mr. Wilson received ineffective assistance of trial counsel in violation of his constitutional right to counsel
>
> Proposition 8: The cumulative effect of all the errors addressed above deprived Mr. Wilson of a fair trial.

(Doc. 26-1). In an unpublished summary opinion, filed October 19, 2011, in Case No. F-2009-1014 (Doc. 26-5), the OCCA affirmed the trial court's Judgment and Sentence.

On July 23, 2012, Petitioner filed a *pro se* application for post-conviction relief in the state district court. *See* Doc. 16-3 at 2 ¶ 6. However, the application was dismissed without prejudice because it was not verified. *Id.* On September 10, 2012, Petitioner filed a *pro se* amended application for post-conviction relief. *Id.* at ¶ 7. Thereafter, Petitioner retained attorney Donn F. Baker to represent him in the post-conviction proceeding. *Id.* at ¶ 8. The state district court held a hearing on the amended application and, by Order filed August 6, 2013, denied the amended application for post-conviction relief. *Id.* at ¶¶ 9, 10. On August 27, 2013, Petitioner filed a post-conviction petition in error (Doc. 16-3). Petitioner claimed that "the District Court erred in finding that Kiona Woodson's testimony at the preliminary hearing and her trial testimony was not false and was not inconsistent with her affidavit attached to the Amended Application for Post-Conviction Relief, as well as her testimony at the hearing on post-conviction relief." *Id.* at 2-3, ¶ 12. By Order filed April 17, 2014, in Case No. PC-2013-809 (Doc. 16-5), the OCCA affirmed the denial of post-conviction relief.

On July 1, 2014, Petitioner, represented by attorney Baker, filed his federal petition for writ of habeas corpus (Doc. 1), along with a supporting brief (Doc. 3). In the petition, Petitioner identified three (3) grounds of error, as follows:

> Ground 1: The evidence presented at trial was insufficient to support Petitioner's convictions [sic] for Murder in the First Degree.
> Supporting facts: The only witness to connect Petitioner to the offense recanted her allegations prior to trial and at trial. Further, there was no evidence connecting Petitioner to the murder weapon.
>
> Ground 2: Admitting the 911 tape into evidence violated Rule 803(2), Due Process Clause, and was prejudicial and cumulative.
> Supporting facts: Admitting the 911 tape into evidence violated Rule 803(2) because it was not as [sic] an excited utterance. Admitting the 911 tape at trial was prejudicial and violated Due Process, and playing it multiple times during trial was prejudicial and cumulative.
>
> Ground 3: Ineffective assistance of trial and appellate counsel.
> Supporting facts: Trail [sic] counsel improperly interfered with Petitioner's right to testify at trial and appellate counsel did not raise the issue in direct appeal, despite Petitioner's request to do so.

(Doc. 1). Petitioner states that he raised grounds 1 and 2 on direct appeal, but admits that his ground 3 claims were not raised on either direct or post-conviction appeal. *Id.* at 6, 7, 9.[2] In response to the petition, Respondent filed a motion to dismiss (Doc. 15), arguing that the petition should be dismissed without prejudice as a mixed petition containing both exhausted and unexhausted claims. As stated above, the Court denied the motion to dismiss. *See* Doc. 20. Thereafter, Petitioner filed a "brief regarding procedural default" (Doc. 21). Respondent filed a response (Doc. 26) addressing Petitioner's exhausted claims and the argument set forth by Petitioner with regard to the anticipatory

---

[2]With the exception of the trial transcripts, citations to the petition and other records reference the Court's ECF pagination.

procedural bar. Respondent also provided the state court record (Docs. 26, 27, 28). Petitioner filed a reply (Doc. 29).[3]

*ANALYSIS*

A.     **Exhaustion/Evidentiary Hearing**

Before addressing Petitioner's habeas claims, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b). *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). As the Court previously determined, Ground 3 has not been presented to the state courts, but as discussed in Part C, below, habeas corpus relief on Petitioner's Ground 3 claims is denied based on an anticipatory procedural bar. Grounds 1 and 2 were presented to the OCCA on direct appeal and are exhausted.

The Court also finds that Petitioner is not entitled to an evidentiary hearing. *See Cullen v. Pinholster*, 563 U.S. 170, 184-85 (2011); *Williams v. Taylor*, 529 U.S. 420 (2000).

B.     **Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence

---

[3]As part of his reply, filed January 16, 2015 (Doc. 30), Petitioner requested that he be allowed to supplement the record with Kiona's letter (Doc. 29-1) and affidavit (Doc. 29-2). By Order filed May 12, 2015 (Doc. 32), the Court relied on *Cullen v. Pinholster*, 563 U.S. 170, 184-85 (2011), to deny the request to supplement the record for resolution of Petitioner's claims under 28 U.S.C. § 2254(d).

presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011); *Williams v. Taylor*, 529 U.S. 362, 386 (2000); *Neill v. Gibson*, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. *See Bell v. Cone*, 535 U.S. 685, 699 (2002); *Hooper v. Mullin*, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." *Woodall*, 134 S. Ct. at 1702 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103); *see also Metrish v. Lancaster*, 133 S. Ct. 1781, 1787 (2013). Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). *Richter*, 562 U.S. at 98; *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

Here, Petitioner raised Grounds 1 and 2 on direct appeal and the OCCA addressed the claims on the merits. Therefore, the Court will review Grounds 1 and 2 under the standards of § 2254(d).

**1. Sufficiency of the evidence (Ground 1)**

In Ground 1, Petitioner alleges that "the evidence presented at trial was insufficient to support Petitioner's convictions [sic] for Murder in the First Degree." *See* Doc. 1 at 5. In support of this claim, Petitioner states that "[t]he only witness to connect Petitioner to the offense recanted

6

her allegations prior to trial and at trial. Further, there was no evidence connecting Petitioner to the murder weapon." *Id.* Additional factual allegations are found in Petitioner's supporting brief. *See* Doc. 3 at 22-28. On direct appeal, the OCCA denied relief on this claim, finding as follows:

> Viewing the evidence in a light most favorable to the State, we find there was sufficient evidence to convince a rational juror that Wilson was guilty of First Degree Murder beyond a reasonable doubt. *See Logsdon v. State*, 2010 OK CR 7 ¶ 5, 231 P.3d 1156, 1161; *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-204; 21 O.S.Supp.2006, § 701.7(A). The evidence showed that Antonio Nears was killed by approximately twelve bullets fired at a very close range while Antonio was sleeping. Seconds after the shooting Kiona Woodson, who was in bed with Antonio during the shooting, identified Wilson as the shooter. We see no error here.

*See* Doc. 26-5 at 2.

In a habeas proceeding, this Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard of review respects the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the testimony presented at trial. *Id.* Both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998). In evaluating the evidence presented at trial, the Court does not weigh conflicting evidence or consider witness credibility. *Wingfield v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997); *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996). Instead, the Court must view the evidence in the "light most favorable to the prosecution," *Jackson*, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993). Further, the Court evaluates the sufficiency of the evidence by "consider[ing] the collective inferences to be drawn from the evidence as a whole." *United States*

7

*v. Hooks*, 780 F.2d 1526, 1532 (10th Cir. 1986). In *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060 (2012), the Supreme Court described two layers of judicial deference applicable to *Jackson* claims:

> First, on direct appeal, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, --- , 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, --- , 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)).

*Johnson*, 132 S. Ct. at 2062. Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a finding of guilt was contrary to, or an unreasonable application of, *Jackson*. 28 U.S.C. § 2254(d)(1); *Spears v. Mullin*, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

Applying the *Jackson* standard, this Court finds that there was sufficient evidence for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt of First Degree Murder. Under Oklahoma law, Petitioner could not be convicted of First Degree Murder unless the State proved beyond a reasonable doubt the following elements: first, the death of a human; second, the death was unlawful; third, the death was caused by the defendant; and fourth, the death was caused with malice aforethought. *See* Doc. 27-11, O.R. Vol. I at 159 (Instruction No. 22 (citing OUJI-CR 4-61)); Okla. Stat. tit. 21, § 701.7(A).

Here, both direct and circumstantial evidence supported the jury's verdict. Petitioner's mother, Ruthie Jones, testified that just before 7:30 a.m. on January 31, 2008, when she left the house to take her grandson to school, Petitioner was present at the house where the shooting took

8

place. *See* Doc. 27-4 at 72. Of all the other family members present at the house prior to the shooting, Petitioner was the only one who was not present immediately after the shooting. In addition, immediately after the shooting, Petitioner departed Tulsa and went to Hutchinson, Kansas, where he was later taken into custody.[4] Significantly, the jury heard testimony demonstrating that Petitioner's niece, Kiona Woodson, and one of her three-week-old twins were sleeping in the same bed with the victim at the time of the shooting. *See* Doc. 27-6 at 12. The jury also heard testimony and evidence demonstrating that, just moments after the shooting, Kiona told her mother, Lynn Woodson, that Petitioner was the shooter, *see* Doc. 27-5 at 31; Kiona told the 911 dispatcher that Petitioner was the shooter, *see* Doc. 26-6 at 6, Doc. 28; and Kiona told multiple law enforcement officers at the scene and during an interview at the police station two (2) hours later that Petitioner was the shooter, *see* Doc. 27-3 at 16, 43, 51; Doc. 27-6 at 92. More than one month after the shooting, Kiona told Tulsa Police Corporal Marcus Harper that Petitioner was the shooter. *See* Doc. 27-5 at 179-180. However, at trial, after having her safety threatened, *see* Doc. 27-6 at 27, Kiona testified that, while she identified Petitioner as the shooter immediately after the shooting, she never actually saw him, *see id.* at 53, and that all she could see was shooting from the doorway and a tan jacket, *see id.* at 42, 45. Even though the victim was shot at "very close" range[5] and shell casings were found inside the bedroom, Kiona testified at trial that the shooter never came in the bedroom

---

[4]Petitioner initially gave a false name to the police officer in Hutchinson, Kansas. *See* Doc. 27-4 at 177.

[5]The medical examiner testified that he noted stippling to the victim's facial and other head wounds, and that "stippling indicates that the gun was in very close proximity to the decedent when it was discharged." *See* Doc. 27-5 at 107-08.

9

and shot from the doorway. *Id.* at 42. Thus, Kiona's trial testimony concerning the location of the shooter did not match the physical evidence found at the scene.

Other physical evidence served to link Petitioner circumstantially to the crime. At the scene of the shooting, Kiona told Officer Charles Haywood that her uncle, Travis Wilson, left the house on foot and went north. *See* Doc. 27-3 at 30, 37. A police canine unit followed a track leading to the Pavilion, a building located on the north side of the fairgrounds, approximately five (5) blocks north of the house where the shooting took place. *Id.* at 68-69. On March 2, 2008, more than a month after the shooting, Tulsa Police recovered a handgun found in the bushes outside the Pavilion. *See* Doc. 27-5 at 117-120. Ballistics testing confirmed that the recovered handgun was used in the shooting of Antonio Nears. *Id.* at 144.

The Court concludes that the evidence, when viewed in a light most favorable to the State, was sufficient to allow a rational trier of fact to have found beyond a reasonable doubt that Petitioner was guilty of First Degree Murder. Petitioner has failed to demonstrate that the OCCA's resolution of this claim was contrary to, or involved an unreasonable application of *Jackson*. For that reason, habeas corpus relief is denied on Ground 1.

## 2. Evidentiary ruling (Ground 2)

In Ground 2, Petitioner claims that "[a]dmitting the 911 tape into evidence violated Rule 803(2), Due Process Clause, and was prejudicial and cumulative." *See* Doc. 1 at 7. Petitioner explains that "[a]dmitting the 911 tape into evidence violated Rule 803(2) because it was not as an excited utterance. Admitting the 911 tape at trial was prejudicial and violated Due Process, and playing it multiple times during trial was prejudicial and cumulative." *Id.* Petitioner makes

additional factual allegations in his supporting brief. *See* Doc. 3 at 29-37. On direct appeal, the OCCA denied relief on this claim, finding as follows:

> The trial court did not abuse its discretion when it admitted State's Exhibit 60, a tape containing the 911 call placed immediately after the shooting. Three foundation requirements must be shown prior to the admission of a hearsay statement as an excited utterance: "(1) a startling event or condition; (2) a statement relating to the startling event or condition; and (3) made while the declarant is under the stress or excitement caused by the startling event or condition." *Taylor v. State*, 2011 OK CR 8, ¶ 21, 248 P.3d 362, 370.
>
> State's Exhibit 60 meets all three foundation requirements. Antonio Nears being shot while his girlfriend and extremely young child were in bed with him undoubtedly qualifies as a startling event. The statements made to the 911 operator, specifically Kiona's identification of Wilson as the shooter, were related to the startling event. Testimony was fairly consistent throughout trial that "[e]verybody appeared to be extremely upset . . . [m]oving back and forth, going from place and, 'oh, my gosh, oh, my gosh' type behavior." Officer Haywood specifically noted that Kiona appeared "extremely upset" and was crying. We find no error in the trial court's determination that this evidence was sufficient to admit State's Exhibit 60 as an excited utterance.
>
> The trial court did not abuse its discretion when it allowed the State to play, on three occasions, part or all of State's Exhibit 60. The State initially played State's Exhibit 60 at the end of the third day of trial. The State subsequently played portions of the tape on the fourth day of trial for two different witnesses in order for them to identify their voices and question them about statements inconsistent with their trial testimony. The jury began deliberation on the fifth day of trial. Reviewing the circumstances under which the State played State's Exhibit 60 we find that it was "not so prejudicial as to have inflamed the jury and denied Appellant a fair trial." *Revilla v. State* 1994 OK CR 24, ¶ 26, 877 P.2d 1143, 1151-1152 (finding no error in showing a jury crime scene photos multiple times).
>
> Even assuming, *arguendo*, that the probative value of State's Exhibit 60 was significantly diminished when the State played it the second or third time, relief is not required. 20 O.S.2001, § 3001.1. State's Exhibit 60 is an exhibit rather than testimony, *Al-Mosawi v. State*, 1996 OK CR 59, ¶ 58, 929 P.2d 270, 284, and could, therefore, go back with the jury during deliberation and they could have listened to the tape as many times as they desired. *Duvall v. State*, 1989 OK CR 61, ¶ 12, 780 P.2d 1178, 1180.

*See* Doc. 26-5 at 3-5.

"[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *see also Hooks v. Workman*, 606 F.3d 715, 748 (10th Cir. 2010). In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *McGuire*, 502 U.S. at 67-68. A federal habeas court has "no general authority to review the state court's evidentiary ruling on hearsay." *Wilson v. Jones*, 544 F. App'x 814, 816 (10th Cir. 2013) (unpublished)[6] (citing *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002)); *Matthews v. Price*, 83 F.3d 328, 331 (10th Cir. 1996) (declining to review a state court's interpretation of its own evidentiary rules regarding hearsay and its exceptions). "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" *Maes v. Thomas*, 46 F.3d 979, 987 (10th Cir. 1995) (quoting *Tapia v. Tansy*, 926 F.2d 1554, 1557 (10th Cir. 1991)); *see also Martin v. Kaiser*, 907 F.2d 931, 934 (10th Cir. 1990) ("errors in the admissibility of evidence are not grounds for habeas corpus relief absent fundamental unfairness so as to constitute a denial of due process of law"). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," when engaged in such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (citation omitted).

In this case, because the state courts applied Oklahoma evidentiary rules, this Court will not examine whether the state court properly admitted the 911 recording based on the excited utterance exception to the hearsay rule. As to Petitioner's due process claim, Petitioner fails to show that his

---

[6]This unpublished opinion is not precedential but is cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

trial, as a whole, was rendered fundamentally unfair by the trial court's admission of the 911 tape. Also, Petitioner's trial was not rendered fundamentally unfair by the prosecution's replaying of portions of the 911 tape to refresh witnesses' memories concerning statements made on the 911 recording that were inconsistent with their trial testimony. Lastly, Petitioner's conclusory claim that his rights under the Confrontation Clause were violated by admission of the 911 tape, *see* Doc. 3 at 29, is without merit. *See Davis v. Washington*, 547 U.S. 813, 822 (2006); *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004); *California v. Green*, 399 U.S. 149, 164 (1970). Significantly, Kiona Woodson testified at trial and was subjected to an extensive cross-examination.

In summary, Petitioner fails to demonstrate that the OCCA's adjudication of his claim concerning admission of the 911 tape was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented at trial. Accordingly, habeas corpus relief on Ground 2 is denied.

**C. Procedural bar (Ground 3)**

In Ground 3, Petitioner alleges that he received ineffective assistance of trial and appellate counsel when "trail [sic] counsel improperly interfered with Petitioner's right to testify at trial and appellate counsel did not raise the issue in direct appeal, despite Petitioner's request to do so." *See* Doc. 1 at 8. As the Court previously determined, *see* Doc. 20, Petitioner has never presented his Ground 3 claims to the state courts. Because the OCCA would impose a procedural bar on those claims if Petitioner were to return to state court to file a second application for post-conviction relief, the claims are subject to an anticipatory procedural bar.

The doctrine of procedural bar prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 724 (1991); *see also Maes*, 46 F.3d at 985; *Gilbert v. Scott*, 941 F.2d 1065, 1067-68 (10th Cir. 1991). "A state court finding of procedural default is independent if it is separate and distinct from federal law." *Maes*, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied evenhandedly "in the vast majority of cases." *Id.* (internal quotation marks and citation omitted).

Here, the Court finds that habeas review of Ground 3 is procedurally barred. The OCCA's procedural bar would be based on Petitioner's failure to raise the claims on either direct or post-conviction appeal, as required by Okla. Stat. tit. 22, § 1086, and would be an "independent" state ground. *Maes*, 46 F.3d at 985. Additionally, the procedural bar would be based on an "adequate" state ground sufficient to bar the claims. *See Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir. 2002) (stating that Okla. Stat. tit. 22, § 1086, "is an independent and adequate state ground for denying habeas relief"). For those reasons, the unexhausted claims in Ground 3 are procedurally barred.

This Court may not consider the defaulted claims unless Petitioner is able to show "cause and prejudice" for the procedural default or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. *See Coleman*, 501 U.S. at 750; *Demarest v. Price*, 130 F.3d 922, 941-42 (10th Cir. 1997). The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural

14

rules." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. *Id.* As for prejudice, a petitioner must show "actual prejudice resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). A "fundamental miscarriage of justice" requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

In his petition, Petitioner cites ineffective assistance of appellate counsel as cause for his failure to raise a claim of ineffective assistance of trial counsel on direct appeal. *See* Doc. 1 at 8. However, Petitioner has never raised a claim of ineffective assistance of appellate counsel in the state courts. As a result, Petitioner's claim of ineffective assistance of appellate counsel is itself procedurally barred and may not serve as cause for the failure to raise the underlying claim of ineffective assistance of trial counsel. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

Next, as part of his brief addressing cause for his failure to raise an ineffective assistance of appellate counsel claim in his application for post-conviction relief, *see* Doc. 21, Petitioner provides an incomplete copy of a letter received from his initial trial counsel, Jack Zanerhaft (Doc. 21-1). The letter lists claims Petitioner could not raise in his application for post-conviction relief "because they were already raised in your direct appeal." *Id.* One of the claims listed was "whether you received effective assistance of counsel." *Id.* Although Petitioner could not have raised a claim of ineffective assistance of appellate counsel on direct appeal, Petitioner nonetheless claims that his understanding of the letter was that he could not raise a claim of ineffective assistance of appellate counsel in his application for post-conviction relief. *See* Doc. 21 at 3. That claim reflects a misunderstanding of the letter. As stated above, the cause standard requires a showing of some

objective factor external to the defense. Petitioner's misunderstanding is not an "objective factor external to the defense" and does not satisfy the standard necessary to establish cause. Furthermore, to the extent Petitioner claims he received ineffective assistance from attorney Zanerhaft in the preparation of his post-conviction application, his claim fails because he is not constitutionally entitled to post-conviction counsel. *See Smallwood v. Gibson*, 191 F.3d 1257, 1269 (10th Cir. 1999) (stating that because there is no constitutional right to the assistance of post-conviction counsel, ineffective assistance of post-conviction counsel may not serve as "cause" to overcome a procedural bar). For all of those reasons, the Court finds Petitioner fails to demonstrate cause for his failure to raise his defaulted claims in state court.

Petitioner also argues that because he claims to be actually innocent, he qualifies for the "fundamental miscarriage of justice" exception. *See* Doc. 21 at 4-5. To meet this test, a petitioner must make a colorable showing of factual innocence. *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000) (citing *Herrera v. Collins*, 506 U.S. 390, 404 (1993)); *see also Sawyer v. Whitley*, 505 U.S. 333, 339-341 (1992); *Schlup v. Delo*, 513 U.S. 298 (1995). Under *Schlup*, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." *Schlup*, 513 U.S. at 316. To make a credible showing of actual innocence, a "petitioner must support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Frost v. Pryor*, 749 F.3d 1212, 1231-32 (10th Cir. 2014) (internal quotation marks and citations omitted). A petitioner has the burden of

persuading the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329.

In his brief regarding procedural default, Petitioner admits he cannot make the necessary evidentiary showing, but claims that had he been allowed to testify at trial, his testimony "would have refuted the State's claims and cast substantial doubt as to his guilt (particularly in light of the lack of direct evidence against him) and no reasonable juror would have convicted him." *See* Doc. 21 at 5. The Court recognizes that in his reply, Petitioner requested that he be allowed to supplement the record with "new" evidence: Kiona's letter and affidavit averring that she had used drugs in the days before and the day of the shooting. *See* Doc. 29 at 6. The Court denied the motion to supplement the record (Doc. 32). However, even if Petitioner had been allowed to supplement the record, Petitioner's "new" evidence of Kiona's drug use, first brought to light almost seven (7) years after the shooting, is insufficient to qualify as credible evidence of actual innocence. *Frost*, 749 F.3d at 1231-32 (restating that new reliable evidence, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial" is needed for a claim of actual innocence). Furthermore, upon consideration of the evidence as a whole, Petitioner has not carried his burden of persuading the Court that, in light of the "new" evidence of Kiona's alleged drug use at the time of the shooting, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. As a result, the Court finds the fundamental miscarriage of justice exception is inapplicable in this case.

Accordingly, because Petitioner has not demonstrated "cause" or that a "fundamental miscarriage of justice" will result if his claims raised in Ground 3 are not considered, the Court

concludes that it is procedurally barred from considering the merits of Petitioner's Ground 3 claims. *Coleman*, 510 U.S. at 724. Habeas corpus relief on Ground 3 shall be denied.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

## **Certificate of Appealability**

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court "indicate[s] which specific issue or issues satisfy [that] showing." 28 U.S.C. § 2253. A petitioner can satisfy the standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citation omitted). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of

reason. *See Dockins v. Hines*, 374 F.3d 935, 937-38 (10th Cir. 2004). As to the claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds was debatable. A certificate of appealability shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The Clerk of Court shall note the substitution of Janet Dowling, Warden, in place of Robert Patton, Director, as party respondent.

2. The petition for a writ of habeas corpus (Doc. 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate Judgment shall be entered in this case.

ORDERED THIS 7th day of July, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE